## LIABILITY OF RIPARIAN OWNER FROM CONSTRUCTION OF A DAM.

Circuit Court of Summit County.

THE COLUMBIA CHEMICAL COMPANY v. WILLIAM B. IRISH.

Decided, November, 1912.

*Waters—One Erecting Dam Liable for Injury to Land Not Overflowed.*

One who dams a water-course, thus raising the level of the water farther up stream, is liable in damages to a riparian owner whose land thereby becomes water-soaked and unproductive, even though the dam caused no actual overflow of water upon the land.

MARVIN, J.; NIMAN, J., concurs; WINCH, J., dissents from judgment of affirmance.

In this opinion, the parties will be spoken of respectively as plaintiff and defendant, in the relation in which they stood in the court below, which is the reverse of the relation here.

The plaintiff is the owner of a farm, along the east side of which, or a part of which, is a channel through which a consider-

able volume of water flows. Originally there was a natural stream of water known as Wolf creek, or Wolf run. This natural stream was straightened, deepened and broadened by the commissioners of Summit county about the year 1893.

A tract of about thirty acres of the plaintiff's land lies along the west side of this channel spoken of as Wolf creek ditch. The general direction of the stream is from north to south, and something like a mile and a quarter south of the south line of the plaintiff's thirty acres, the defendant corporation erected across this stream a dam on its own premises, for the purpose of storing up water which should come down the stream or ditch for use in the manufacturing plant of the defendant. This dam was erected in 1899. As originally constructed it was a solid dam, but within a year or two thereafter the construction of the dam was so changed that gates were placed in it in such wise that they could be raised and lowered, and the construction was such that, when these gates were raised to the full distance to which they could be raised, the dam formed but a slight obstruction to the current of the stream. The crest of the dam is three feet higher than the natural water level and, of course, when the dam is full of water to the crest, the water is held back and caused to remain in the upper part of the channel, and to a greater or less extent overflow its banks.

The plaintiff alleges in his petition that the result of such holding back of the water has caused it to overflow his said thirty acres of land; that such overflow of the said waters upon the land and the raising of the level of said water in the said creek or ditch, all directly caused by the construction and maintenance of the said dam by the defendant, was to increase, and ever since said dam was constructed in 1899, has continued to increase the volume of water in said creek or ditch, and has inundated and overflowed the said thirty acres of land during a greater portion of the winter and spring of each year ever since said dam was constructed; that this condition is also true at all times when there has been a heavy fall of rain or high water, regardless of the season of the year; that such inundation and overflow do and have caused sand, gravel and sediment to be deposited on said thirty acres of land, and such inundation

and overflow have resulted in causing all said thirty acres of land to become watersoaked and sour, so that ever since the construction of the said dam by the defendant, he has been unable to cultivate said thirty acres of land or to raise anything whatsoever upon any portion of the same; that prior to the construction of said dam the plaintiff was able to and did cultivate every part of said tract, and raised thereon numerous crops of corn, oats, wheat and hay; that prior to the construction of the dam the land was dry and suitable for cultivation; that ever since the construction and maintenance of said dam by the defendant said land has been nothing but a swamp, so that by reason of its soft and marshy condition, horses and cattle could not venture safely to pasture thereon except during the summer seasons of dry years; that the condition of such land as it has existed ever since the construction of the dam is the proximate and direct result of the construction and maintenance of such dam.

The amended answer of the defendant, which was the answer upon which the case was tried, admits the ownership of the land by the plaintiff and the construction of the dam by the defendant; that the dam raised the level of the creek about three feet higher than the natural level of said creek.

The plaintiff, by his petition, which was filed on the 21st day of March, 1910, sought to recover for the injuries to his property from the time the dam was constructed in 1899 up to the time of the filing of the petition. The defendant pleaded the statute of limitations as to all damages accruing prior to March, 1906, and the court sustained this claim of the defendant.

It developed on the trial that from March, 1908, until the filing of the petition, the farm of the defendant, including the thirty acres in controversy here, was under lease to another party, and the court held that for the time in which the land was so under lease, the plaintiff could not recover; so that the controversy narrowed down to whatever loss the plaintiff sustained between March, 1906, and March, 1908, a period of two years.

The plaintiff, over the objection of the defendant, was permitted to introduce evidence tending to show that the land in controversy was rendered soggy and wet and sour, and unfit

for cultivation by the maintenance of the creek, bordered on said land, higher than it would have been but for the dam, even though the water did not overflow the land. That is, that without the land being actually covered over with water, the maintenance of the water at a higher level than it would have been but for the dam was a great injury to the land in rendering it unfit for cultivation and preventing the raising of crops thereon.

It is urged that under the petition this evidence should not have been admitted, because of the allegations in the petition that the water was caused to overflow the land and deposit gravel, and sand and sediment thereon, and that the overflow on the land had caused the same to become watersoaked and sour.

It was urged on the part of the defendant that except the land became water-soaked and sour by being overflowed with water, the plaintiff could not, under his petition, recover.

We think this position of the defendant is not sound. The allegation in the petition in this regard is: "He avers that the effect of the overflow of said water upon his land and the raising of the level of the water in the said creek or ditch, all directly caused by the construction and maintenance of said dam by the defendant, was to increase, and ever since said dam was constructed in 1899 has continued to increase, the volume of water in said creek or ditch, and has inundated and overflowed said thirty acres of land during a greater portion of the winter and spring of each year since 1899; that such inundation and overflow have resulted in causing all of said thirty acres of land to become water-soaked and sour, so that ever since the construction of said dam by the defendant he has been unable to cultivate the same." etc.

Construing this petition liberally, as the plaintiff is entitled to have it construed, we think the allegations are sufficient to permit evidence that the maintenance of the higher level of water along the line of the plaintiff's land caused the land to become water-soaked and sour, and thereby interfered with its cultivation.

Evidence was introduced on the part of the defendant showing that the same year that this dam was constructed, the Belt Line Railroad constructed an embankment along the east side of this ditch some three feet higher than the bank of the ditch, and it is urged by the defendant that this embankment along the east side of the ditch was in great measure, if not wholly, the cause of any increase of the volume of water along the line of the defendant's land.

It is clear that when the water of the stream is held back by the dam so as to fill up to the crest of the dam, the water will necessarily be higher than it would be without the dam, for a greater or less distance up the stream. However far up the stream we may go, if it is three feet higher at this dam than it would be without it, then the surface of the stream must be higher as far up the stream as it is affected at all by this dam, and it is shown that opposite the plaintiff's land it was several inches higher that it would be without the dam.

It is said, and the evidence seems to sustain the proposition, that such increase in the level of the surface of the stream along the line of the plaintiff's land would not cause the water to overflow upon the land. But the evidence tends to show that even without the overflowing, such increase in the height of the stream would cause the land to be swampy, water-soaked and sour.

How the embankment along the east side of the stream placed there by the railroad company, could in anywise contribute to the injury to the land by such soaking under the surface is not clear. So long as the water is not above the banks of the channel, the amount of the water in the channel is not affected by the height of this embankment, placed there by the railroad company.

The testimony of the plaintiff, his sons and others, is that before the construction of this dam the thirty acres of land in controversy produced good crops each year, from the time of the opening of the ditch in 1893; that from the time the dam was put in, the land was practically valueless. It is true that some wild grass grew upon it, and that cattle which were being pastured upon the farm of the plaintiff were permitted out on this

thirty acres, but certainly the evidence tends to show that such use of the land was of no real value. It does not necessarily follow that because crops were raised upon this land during all the time from 1893 to 1900, and that it has produced no crops since, the loss of crops results from the putting in of the dam, because it may be that the seasons are different, and that the same is true of other lands in the vicinity, but there is no evidence tending to show that this failure of crops was because of a difference in the seasons or for any other reason than because of the increase of water in this ditch, and certainly it can not properly be said that such evidence does not tend to show, indeed, it does not make it probable, that the difference in the availability of the land for raising of crops results from the holding back of the water by this dam.

Among the witnesses who testified on the proposition that the land was in good condition for cultivation before the putting in of the dam and that it was not susceptible of being tilled after the putting in of the dam on account of the wet, is Mr. O. C. Barber, who is shown to be a very extensive land owner, probably the most extensive land owner in the county. This witness says that the rental value of the land, in his opinion, was easily $10 per acre. Mr. Charles Hansberger testifies that after the ditch was put in this land produced good crops of corn, oats and timothy; that after the dam was in, the land was wet and soggy, and that in his opinion the rental value of the land was from $6 to $10 per acre.

Mr. Irish himself undertook to put it at $15 per acre, but a further examination showed that he based that upon the proposition that he thought he could make it pay him $15 per acre, so that the court excluded from the jury his estimate as to $15 per acre. But from the other evidence, including that of Barber and Hansberger, the jury might well have reached the conclusion that its rental value was from $6 to $10 per acre. The verdict of the jury shows that they estimated it at about $7 per acre, and so we reach the conclusion that the verdict was not excessive, and that it is supported by the testimony as to the rental value of the land when the stream was unobstructed, and the fact that it was of no practical value after the dam was put in and the obstruction made.

We reach the conclusion, therefore, that there was no error to the prejudice of the defendant in the trial of this cause, or in the overruling of the motion for a new trial, and the judgment is affirmed.